**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

WILLIAM JOSHUA POTTS,                :

     Plaintiff,                :

vs.                :                CA 21-0466-TFM-MU

KILOLO KIJAKAZI,                :
Acting Commissioner of Social Security,
                :

     Defendant.

## REPORT AND RECOMMENDATION

Plaintiff William Joshua Potts brings this action, pursuant to 42 U.S.C. §

1383(c)(3), seeking judicial review of a final decision of the Acting Commissioner of

Social Security denying his claim for supplemental security income benefits. This case

is before the Magistrate Judge for entry of a report and recommendation, pursuant to 28

U.S.C. § 636(b)(1), on the administrative record (Doc. 14), as supplemented (Doc. 20),

Plaintiff's brief (Doc. 22), as amended (Doc. 26), the Commissioner's brief (Doc. 24),

and the arguments of the parties on August 18, 2022 (*see* Doc. 27).[1] Upon

consideration of all relevant pleadings, along with the arguments of the parties, the

---

[1]    The *pro se* Plaintiff was present by telephone for the oral arguments, as was his mother, Mrs. Carmen Potts. (*See id.*). Mrs. Potts was a capable non-lawyer advocate for her son's position in this matter. As part of that advocacy, Mrs. Potts was granted permission to read into the record a character letter written for her son by Dr. Lawrence, a retired Foley Elementary School principal. And while the contents of that letter are moving, the letter can play no part in this Court's decision principally because the letter does not constitute new ***medical*** evidence but also because the letter was written well after the ALJ's April 7, 2019 decision denying benefits.

undersigned **RECOMMENDS** that the Court **AFFIRM** the Acting Commissioner's decision denying benefits.

## I. Procedural Background

Plaintiff filed an application for supplemental security income on June 6, 2019. (*See* Doc. 14, PageID. 353-60; *compare id. with id.,* PageID. 152 (in ALJ's decision, she identifies the date Potts filed his application for benefits as June 6, 2019)). Potts claim was initially denied on October 10, 2019 (*id.,* PageID. 246 & 265-69) and that determination was affirmed on reconsideration on February 13, 2020 (*id.,* PageID. 263). Following Plaintiff's March 27, 2020, request for a hearing before an Administrative Law Judge ("ALJ") (*see id.,* PageID. 290-91), several hearings were conducted before an ALJ in this case, first on August 18, 2020 (*id.,* PageID. 159-92), and then on February 3, 2021 (*id.,* PageID. 193-218). The second hearing was conducted because the ALJ wanted to determine, before she issued a decision on Potts' current application for SSI benefits, whether it was Plaintiff's position (based on a written document in the record) that he did not intend to file a new application for benefits and, instead, he intended to request reinstatement of his prior award of benefits. (*See id.,* PageID. 198). The ALJ explained to Plaintiff and his attorney that if he intended to seek reinstatement of benefits, as opposed to proceeding with a new application for benefits, he not only had to request reinstatement but would have to show that his benefits were ceased due to unearned income and not because of excess resources. (*Id.*). In addition, the ALJ explained that if Potts was seeking reinstatement of benefits, she would have to remand his case back to the district office to have that office straighten things out; however, if he wanted to proceed on his new application for benefits, which was the "only thing" within

her jurisdiction, she would issue a decision. (*See id.,* PageID. 199-200). Ultimately, the way things were "left" after the second hearing was an agreement that the ALJ would proceed on the current application for benefits, unless Plaintiff, through counsel, informed the ALJ anytime during the week following the second hearing that he wanted to pursue a remand back to the district office. (*See id.,* PageID. 200-02).

There is nothing in the administrative record demonstrating that Plaintiff, through his attorney, decided to pursue a remand back to the district office and reinstatement of his prior award of benefits (*see generally* Doc. 14); therefore, on April 7, 2021, following the second hearing, the ALJ issued a decision on Potts' current application for benefits, finding claimant not disabled and therefore, not entitled to supplemental security income benefits. (*Id.,* PageID. 141-53). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Potts retains the residual functional capacity to perform a reduced range of sedentary work (*id.,* PageID. 146) and can perform those sedentary jobs identified by the vocational expert ("VE") during the first administrative hearing (*see id.,* PageID. 152; *compare id. with id.,* PageID. 189-90). On May 1, 2021, the then *pro se* Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 350); the Appeals Council denied Potts' request for review on September 14, 2021 (*id.,* PageID. 121-23). In the decision denying Potts' request for review, the Appeals Council considered (but did not exhibit) certain evidence submitted by Plaintiff and concluded that there was not a "reasonable probability that it would change the outcome of the decision." (*Id.,* PageID. 122). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to fibular fracture, intraarticular calcaneus fracture, ADD, neuropathic muscular atrophy, and a brain injury impacting memory, concentration, and the ability to multi-task. (*See* Doc. 22-1, PageID. 734). The Administrative Law Judge (ALJ) made the following relevant findings:

**2.      The claimant has the following severe impairments: chronic ankle sequelae status post compound fracture right tibia/ankle and fracture right calcaneal area with dislocation in tarsals healed callus fracture; subluxation of calcaneus underneath the talus consistent with traumatic flatfoot deformity; arthritis in ankle; early osteoarthritis of the right shoulder; insomnia; pes planus; and sural and saphenous neuritis (20 CFR 416.920(c)).**

.      .      .

**3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  416.920(d), 416.925 and 416.926).**

.      .      .

**4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant can occasionally lift and carry 10 pounds and can lift/carry items of negligible weight frequently. The claimant can stand and/or walk for 2 hours and sit for 6 to 8 hours per workday with customary breaks. The claimant cannot operate leg and/or foot controls or perform overhead work. The claimant can occasionally push and/or pull arm controls. He cannot work at unprotected heights. Due to pain, psychological factors, fatigue, side effects, etc., he would be expected to experience deficits in concentration, persistence and pace that would limit him to the performance of simple, unskilled tasks with only occasional changes in the work setting or duties.**

.      .      .

**5.      The claimant has no past relevant work (20 CFR 416.965).**

**6.     The claimant was born on October 2, 1990 and was 28 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).**

**7.     The claimant has at least a high school education (20 CFR 416.964).**

**8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

.     .     .

**10.     The claimant has not been under a disability, as defined in the Social Security Act, since June 6, 2019, the date the application was filed (20 CFR 416.920(g)).**

(Doc. 14, PageID. 143, 145, 146, 151 & 152) (emphasis in original).

## II. Standard of Review and Claims on Appeal

The scope of this Court's review is limited to determining whether the Commissioner of Social Security, through the ALJ, applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

The Commissioner of Social Security employs a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. This sequential evaluation process considers:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:

---

[2]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[3]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

(1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work or has no past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history— of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

On appeal to this Court, the undersigned agrees with the Defendant, that the *pro se* Plaintiff has identified three issues in this case, as follows: (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the Appeals Council failed to review and take into consideration the mental health records he submitted on July 21, 2021; and (3) a sentence six remand is warranted in this case for consideration of new evidence.[4]

---

[4]     To the extent Plaintiff wishes to argue that he is entitled to reinstatement of his previously-awarded benefits (*see* Doc. 22-2, PageID. 736 ("The[r]e are papers from when I first got SSI. It should just have been reinstated but the employee that first took the information at the social security office[] started my case over without explain[ing] to me what she was doing. When I found out it was too late and the lawyer I had did not apply for reinstatement and filed a new case.")), the undersigned cannot agree. The ALJ at the second hearing certainly left it to Plaintiff and his attorney to advise her in the week after the hearing whether Potts wanted to pursue the reinstatement route and if she had received such a request from the Plaintiff, she would have remanded the case to the district office for its consideration, in the first instance of (Continued)

**A.     ALJ's RFC Determination.**  Plaintiff attacks the ALJ's RFC determination and ultimate decision of non-disability, arguing that he can only sit or stand for 2 to 3 hours before he must lift his leg for blood circulation, he must use a cane (or a knee or foot brace) when standing or walking, hard physical activity increases pain to the point of causing distraction and lack of concentration from work tasks (leading to abandonment of tasks), his mental impairments (ADD, depression, and anxiety) impact his memory and ability to concentrate, such that he cannot complete multi-directional (or multi-step) tasks. (*See* Doc. 22 & Attachments).

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Sec. Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing, or walking, and mental abilities,

Plaintiff's request for reinstatement of benefits. It was because Plaintiff and his attorney did not tell the ALJ that they wanted to pursue reinstatement that the ALJ entered a decision in this case on Plaintiff's June 6, 2019 application, the sole matter over which the ALJ had jurisdiction. Accordingly, Potts waived his reinstatement argument and is "left" with the ALJ's April 7, 2021 decision on his June 6, 2019 application for supplemental security income benefits.

such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers, and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical, or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Sec.,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . ."). "An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments." *Packer, supra,* 542 Fed.Appx. at 891.

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether

substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all

---

[5]     It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted).

In this case, the undersigned finds that the ALJ sufficiently inked her RFC assessment—that is, a reduced range of sedentary work (Doc. 14, PageID. 146)[6]— to specific evidence in the record bearing upon Potts' ability to perform the physical, mental, sensory, and other requirements of work (*compare id.*, PageID. 146-51 *with generally* PageID. 165-83, 202-04, 412-19 & 548-656). The ALJ explained in some detail (and persuasively) how the medical and other evidence of record supported the components of her RFC determination (*see id.*, PageID. 150-51[7]; *compare id. with*

---

[6]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[7]    "The undersigned finds . . . that the claimant is able to perform a range of sedentary work as set forth above. The claimant has a well-documented right foot deformity with some atrophy and reduced strength, motion and sensation, which can reasonably be expected to affect his ability to stand and walk and push/pull leg and foot controls. The claimant also has a slight leg length discrepancy, which is largely corrected with orthotics and a shoe lift, and posttraumatic arthritis, which similarly affects his ability to stand, walk, push and pull. The limitation to a reduced range of sedentary work would also account for some occasional complaints of back and hip pain. However, the record does not support a finding that the claimant is unable to sit consistent with sedentary work or a medical need for a cane, crutch or other assistive device. The claimant has generally complained of pain in his right lower extremity with prolonged standing and walking, not sitting. The claimant's treating providers have discussed additional surgery but to date, the claimant has declined more surgery. Indeed, the claimant has not taken any prescription medication throughout most of the adjudication period, choosing instead to just take vitamins and other natural remedies. The claimant has worked since the application date, he continued to skateboard after the accident (he skateboarded to and from work while living in Denver in 2017/2018), he reported dancing, exercising and doing push-ups and he is able to drive, all of which supports the ability to perform a range of sedentary work. As of February 2021, he was taking classes online (Exhibit B17F). As for the assistive device, the claimant presented to the most recent consultative evaluation in February 2021 with a crutch but he otherwise did not present with an assistive device. Rather, the claimant's gait is typically described as normal or fairly normal with no assistive device. He did not use an assistive device when he applied for benefits and he had no difficulty walking (Exhibit B2E). The claimant did not use an assistive device at the consultative (Continued)

PageID. 146) and, in particular, the Court observes that the ALJ's RFC determination is consistent with objective testing (*compare id. with id.,* PageID. 567 (x-rays of the right tibia-fibula on August 21, 2019, revealed the following: "Patient status post intramedullary nail fixation of right distal to and fibular fracture. The alignment on the AP looks good with very subtle translation of the distal tibia laterally, otherwise alignment looks good. The lateral view shows slight recovery at the distal tibial fracture site. The fracture is completely healed with mature Callus radiographically."; and x-rays of the right foot that same date showed: "Patient with sequela/healed callus fracture, questionable talar head fracture. There is flattening of the normal arch of the foot, the talus is pointed inferior early with lateral subluxation of the calcaneus underneath the talus consistent with traumatic flatfoot deformity. Arthritic changes at the talonavicular joint and calcaneocuboid joint, early states present."); PageID. 600 (January 15, 2020 x-rays of the right shoulder showed evidence of early osteoarthritis); PageID. 630 ("X-rays were obtained today [December 17, 2019] of his right foot and ankle, which do show appropriate fixation of his tibia hardware distally. He does have pes planus. No acute fracture or bony abnormality is identified per my read. He does show healing of his calcaneus fracture."); PageID. 634 (x-ray of right ankle on February 4, 2020, produced

---

evaluation with Dr. Fontana or at any of his office visits. The claimant also has early osteoarthritis in his right shoulder, which limits his ability to do overhead work and push/pull but he otherwise has good use of his hands and upper extremities. The lifting and carrying restrictions inherent in sedentary work would further account for some pain and/or loss of motion in his right shoulder. The record does not support additional functional limitations related to the claimant's shoulder, as he has had only minimal, conservative treatment and he has been able to work, exercise, prepare meals, do household chores, drive, and do art projects. The undersigned has further limited the claimant to simple unskilled tasks with only occasional changes in the work setting or duties to account for some loss of concentration due to pain, possible medication side effects, and/or fatigue secondary to insomnia and other various symptoms." (*Id.*).

the following impression: "Partially visualized right tibial intramedullary rod with distal locking screw **without evidence of hardware complication**.")) and objective examination findings of record (*compare id. with id.,* PageID. 566 (on examination by Dr. Jason Rocha, on or about August 21, 2019, Potts' gait was noted to be normal and examination of the right lower extremity revealed sensation intact to light touch throughout peripheral nerve distributions and normal to light touch throughout dermatomes, strength of 5/5 and normal muscle tone of the right tibialis anterior and the right gastrocnemius, right ankle range of motion, dorsiflexion with knee extended, was 20 degrees, and a stable right foot and ankle); PageID. 571 (examination by Dr. Fontana, on September 25, 2019, revealed good range of motion of the shoulders, and with respect to his right lower extremity, there was some slight numbness in the posterior part of the distal tibia around the Achilles tendon area and the anterior ankle area, a deformity of the calcaneus and a mild deformity in the mid-foot, weakness in the toes on flexion and extension, a fairly normal gait but toe/heel gait was weak on dorsiflexion in the right foot, squatting was fair, and measurements of the calf and thigh on both extremities were left calf 34 cm, right calf 31 cm, left thigh 34 cm, and right thigh 32 cm); PageID. 584 (examination of Potts' right ankle/foot by Dr. Lane on December 6, 2019, revealed "traumatic pes planus deformity of the foot with external rotation, valgus deformity partially correctable," 5/5 tibialis anterior strength, 3/5 posterior tibialis strength, 5/5 peroneals, near normal correction with orthotics, intact sensation, and 2+DP, PT pulses with vascular exam[8]); PageID. 600 (examination of Potts' right

---

[8]     Following this examination, Dr. Lane recommended orthotics and conservative management. (*Id.,* PageID. 585).

shoulder on January 15, 2020 by Dr. John Todd revealed no deformity, no crepitus, no tenderness over the bicipital groove or over the AC joint, intact sensation with light touch throughout and intact capillary refill, forward flexion within normal limits with discomfort, abduction was full with pain on the way back down, he was able to perform external and internal rotation, he was able to reach behind the back nearly symmetrical to the left side, strength was good in the subscapularis, the infraspinatus, and the supraspinatus, Hawkin's and Speed's test were negative, but O'Brien's test was positive with a pop)); PageID. 623 (February 4, 2020 physical examination by Dr. Mark Perry contains the notation that Potts was in no acute distress and that examination of the right foot and ankle revealed well-healed incisions with no evidence of infection or cellulitis; Perry had Potts stand on the UCBL, and the doctor observed a nice correction of the hindfoot, with Potts reporting that it made him more stable when standing, and the UCBL, on bilateral AP radiograph, was in place on the right such that the top of Potts' talar domes were appropriately equal; Perry's plan was to provide Potts with a 3/8-inch lift added to the sole of the right shoe to provide him with improved symptoms when standing and walking); PageID. 642-43 (May 26, 2020 examination by Dr. Robert Kobelja, a neurologist, revealed 5/5 motor strength throughout with the exception of the ankle invertors on the right which was 0/5 because of mechanical fixation, slight weakness in toes on extension in the right foot but normal flexor; sensation was intact and symmetric to light touch, temperature, pinprick, and proprioception throughout except the right foot in the webbing in the 1 and second toe (deep fibular), decreased in the medial aspect of the foot by the arch, and decreased in the lateral aspect of the heel but normal distally in the sural distribution; reflexes were 2/2 throughout on the right and

left, Plantar response was flexor bilaterally, and Hoffman's sign was absent bilaterally; on coordination testing, there was no dysmetria on finger-nose-finger or heel-knee-shin testing, there was no dysrhythmia on rhythm clapping or toe tapping, fast finger tapping was normal and symmetric, rapid alternating movements were normal, and no resting or postural tremor was observed; and Potts' gait was noted as being narrow based with normal stride length, heel strike, and arm swing, with tandem gait being normal, and Potts was able to toe walk and heel walk without difficulty); PageID. 651-55 (on examination by Dr. Luke Fondren on February 27, 2021, Potts was noted to be in no acute distress; his gait was normal with a reciprocal gait pattern; he had no palpable muscle spasms, muscle tone to bulk was normal throughout, and his muscle strength was 5/5 in the upper extremities and the left lower extremity but in the right lower extremity hip extension and abduction, leg flexion and extension, and ankle plantar flexion and dorsi-flexion were all 4/5; sensory examination was normal to pinprick and light touch throughout; reflexes were symmetric in the biceps, brachioradialis, patellar and Achilles distribution; Potts was able to lift, carry and handle light objects and could pinch, grasp and manipulate small and large objects without difficulty but could not squat and rise without significant difficulty and could not walk on his heels or toes; Potts was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table and he was able to dress and undress adequately; range of motion testing of both shoulders was normal throughout and in the right ankle, plantar flexion was 30/40, dorsi-flexion was 15/20, eversion was 10/20, and inversion was

20/30)).[9] The foregoing objective findings, combined with the conservative (and relatively infrequent) treatment of Plaintiff's right shoulder and foot/ankle pain—little to no prescribed pain medications, as Plaintiff prefers and apparently gets relief from vitamins, over-the-counter creams, and herbal remedies, etc. (*see id.,* PageID. 484 (list of medications))—are consistent with and provide substantial support for the ALJ's RFC determination. Moreover, the ALJ's RFC findings are entirely consistent with Plaintiff's reported daily activities (*see id.,* PageID. 173-74 & 182-83 (Potts' testimony that he enjoys listening to music, dancing a little, he occasionally skateboards, he reads a lot, and he watches Japanese cartoons and films/movies); PageID. 180-81 (Potts' testimony that he can take care of his personal needs—like brushing his teeth and showering—and helps his mother cook; he exercises his core muscles in 15-minute workout routines); PageID. 412-18 *(*functional report completed by Potts reflect that Plaintiff needs no assistance with personal care—*e.g.,* dressing, shaving, using the bathroom, etc.; he can perform normal household chores, at least weekly, like cleaning and laundry, as well as mowing and tending the garden; he cares for the family dogs; he can make sandwiches and otherwise find something to eat for lunch, helps his Mom cook, and cooks dinner for his family at least once weekly; he helps his Mom shop; he can drive; he can walk 2 hours tops before needing to stop and rest; and he enjoys watching films, reading, listening to music, and his artwork)), inclusive of Potts' artwork (*see id.,* PageID. 171 (plaintiff's testimony that he works in several mediums, including graphite and pen work but also photography, and estimated he spent anywhere from 2

---

[9]    In short, the objective medical evidence of record simply does not "flag" any reason why Potts would be unable to perform the sitting required of sedentary work, as well as the occasional standing and/or walking needed for a reduced range of sedentary work.

to 10 hours a week on his artwork)) and his on-line classwork (*see id.,* PageID. 651). And, finally, the ALJ's RFC determination finds further support in the evidence of record demonstrating that Potts has worked since his application date and performed volunteer work (*see id.,* PageID. 165-66 (Potts' testimony at the first administrative hearing on August 18, 2020, that since his application date, he worked in a restaurant for about 8 months and helped his Dad on a few jobs by painting); PageID. 82-83 (Potts' testimony at the second administrative hearing on January 3, 2021, that since the hearing in August of 2020, he had done some painting on a few of his Dad's projects and that he worked as a volunteer at a Spanish Fort food pantry)), and the evidence revealing that Plaintiff's right lower extremity pain increased after prolonged standing and walking (*see, e.g., id.,* PageID. 569 (Potts told Dr. Fondren that his right leg and foot pain increases with prolonged standing and walking)).[10]

To the extent Plaintiff argues that the ALJ erred in discounting the opinion of his surgeon, Dr. Perry (*see* Doc. 22-4, PageID. 742; Doc. 22-5, PageID. 746, 761-62), this Court disagrees. As part of the process of determining a claimant's RFC, that is, "the most [he] can still do despite" the limitations caused by her impairments, 20 C.F.R.

---

[10]     The undersigned would be remiss in failing to point out that at one point during his first administrative hearing, Potts' testified that the only thing preventing him from working in a seated position was his shoulder (*id.,* PageID. 170) and, further, following the administrative determination by the ALJ, Potts himself backhandedly indicated in a June 28, 2021 letter penned to the Appeals Council that he can perform sedentary work (*see id.*, PageID. 501 ("My deformed foot makes it almost impossible to stand on it for more than three hours, before I must sit and elevate it. I also cannot carry anything heavy because it pressures down on my whole right side especially my foot creating a lot of pain. . . . I have tried other jobs standing but with no success! I am in a catch 22[, as I] cannot go back to my old work of plumbing or construction but cannot afford to go to school and get a degree to have success finding a sit[-]down job.")). Where Potts errs in his statements to the Appeals Council is in suggesting that he must return to school to find sedentary work, as the testimony of the VE during the first administrative hearing conducted in this case on August 18, 2020 clearly identified unskilled sedentary work that Potts can perform (without the need to return to school). (*See id.,* PageID. 189-90).

404.1545(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining physicians and, indeed, this issue is often at the forefront in social security cases.  *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency.").  "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

The ALJ analyzed the opinion evidence of Plaintiff's surgeon, Dr. Perry, in the following manner:

> The undersigned has considered the opinion from the claimant's treating provider, Dr. Perry, dated February 2020 (Exhibit B15F). Dr. Perry indicated that the claimant has a debilitating injury. The undersigned does not find this persuasive. It is conclusory and addresses an issue reserved to the Commissioner. Dr. Perry seems to indicate that the claimant is no longer able to perform the "heavy manual labor" he was doing prior to the accident. The undersigned finds this persuasive. The undersigned has limited the claimant to a reduced range of sedentary work. The undersigned does not find the need for a temporary disabled parking pass persuasive. Dr. Perry provided the parking pass for only six months, which does not support a continuous or twelve month need. The parking pass also does not preclude the finding that the claimant is able to perform a range of sedentary work.

(Doc. 14, PageID. 151).

The crucial portion of Dr. Perry's February 4, 2020 opinion, which the ALJ found unpersuasive, was his suggestion that Potts has a debilitating injury (*compare id. with id.,* PageID. 639 ("If there is any additional questions as to if this young man truly has debilitating injury as a result of the accident of a driver running a stop and hitting him on his motor driven cycle, please contact my office.")). The undersigned agrees with the ALJ's finding that whether Plaintiff has a debilitating injury/impairment is an issue reserved for the Commissioner, the Eleventh Circuit having recently determined that a physician's conclusion that a claimant's condition/injury is debilitating "goes to the determination of disability, an administrative issue reserved for the Commissioner." *Figuera v. Commissioner of Social Sec.,* 819 Fed.Appx. 870, 872 (11th Cir. July 21, 2020) (citations omitted); *see also* 20 C.F.R. § 416.927(d) (opinion that an individual is disabled is not a medical opinion and, instead, is an opinion on an issue reserved to the Commissioner of Social Security). Accordingly, the undersigned perceives no reversible

error concerning the ALJ's consideration of the opinion evidence offered by Dr. Perry[11] and because, as aforesaid, the ALJ's RFC determination was based on substantial evidence of record, the Court should affirm the ALJ's decision denying benefits unless Plaintiff establishes that a remand is necessary for consideration of "new" evidence he submitted to the Appeals Council or for the first time to this Court.

      **B.**    <u>**New Evidence Submitted to the Appeals Council**</u>. Potts contends that the Appeals Council erred in failing to review and consider the mental health records he submitted on July 21, 2021. (*See* Doc. 22, PageID. 731). In its review decision dated September 14, 2021, the Appeals Council commented on the additional evidence submitted to it, as follows: "You submitted evidence from Mark D. Perry (3 pages) dated February 4, 2020, Alta Point (32 pages) dated December 3, 2020 through March 25, 2021 and an undated Medication list (1 page). We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (Doc. 14, PageID. 122).

      The Eleventh Circuit has made clear that "[w]ith few exceptions, the claimant is allowed to present new evidence at each stage of th[e] administrative [review] process[,]" including before the Appeals Council. *Ingram v. Commissioner of Social Sec. Admin.,* 496 F.3d 1253, 1261 (11th Cir. 2007). And while the Appeals Council has the discretion not to review the ALJ's denial of benefits, *Flowers v. Commissioner of Social Sec.,* 441 Fed.Appx. 735, 745 (11th Cir. Sept. 30, 2011), it "must consider new,

---

[11]     The fact that Dr. Perry gave Potts a temporary disabled parking pass is simply not contrary to the determination that Plaintiff can perform sedentary work both because it was temporary and because the issuance of same presupposes that the individual has no issues with sitting (and driving).

material, and chronologically relevant evidence" submitted by the claimant. *Ingram, supra,* 496 F.3d at 1261*; see also* 20 C.F.R. § 416.1470(a)(5) ("The Appeals Council will review a case if . . . the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.").

> "Evidence is material if a reasonable [probability] exists that the evidence would change the administrative result." *Hargress v. Soc. Sec. Admin., Comm'r,* 883 F.3d 1302, 1309 (11th Cir. 2018). "New evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision.*" Id.*

*Phillips v. Social Sec. Admin., Commissioner,* 833 Fed.Appx. 308, 320 (11th Cir. Nov. 3, 2020); *see also Whiddon v. Kijakazi,* 549 F.Supp.3d 1318, 1322 (M.D. Ala. 2021) (same). "Merely acknowledging that the claimant submitted new evidence is not sufficient; the Appeals Council must 'adequately evaluate it.' But the Appeals Council is not required 'to provide a detailed discussion of a claimant's new evidence when denying a request for review.'" *McCullars v. Commissioner, Social Sec. Admin.,* 825 Fed.Appx. 685, 692 (11th Cir. Sept. 2, 2020) (internal citations and footnote omitted).

Here, in denying Potts' request for review, the Appeals Council found that the treatment records from AltaPointe Health Systems (*see* Doc. 20, PageID. 697-727), the only records about which Plaintiff complains (*see* Doc. 22, PageID.22, PageID. 731),[12]

---

[12]     It is for good reason that Potts only complains about his mental health records, as the evidence referenced in the Appeals Council's decision denying review related to Dr. Perry (Doc. 14, PageID. 122 (referencing 3 pages dated February 4, 2020); *id.,* PageID. 127-28 ("To Whom it May Concern" letter penned by Dr. Perry on February 4, 2020)), was specifically considered by the ALJ in her decision denying benefits (*see id.,* PageID. 151 ("The undersigned has considered the opinion from the claimant's treating provider, Dr. Perry, dated February 2020 (Continued)

did "not show a reasonable probability that [they] would change the outcome of the decision[]" (Doc. 14, PageID. 122), meaning they were not material, *see McCullars, supra,* 825 Fed.Appx. at 692. This Court too has reviewed the records from AltaPointe Health Systems dated December 3, 2020 through March 25, 2021, and agrees with the Appeals Council that Potts' new evidence was immaterial. To be sure, this evidence does reveal that on intake, on December 3, 2020, Potts was diagnosed with major depressive disorder, single episode, unspecified (*see* Doc. 20, PageID. 714); however, Potts returned to the clinic on only one additional occasion, specifically on December 16, 2020 (*see id.,* PageID. 711), and was discharged from therapy on March 25, 2021 due to a lack of contact for 90 days (*id.,* PageID. 702). Based on this brief treatment history, it is decidedly unlikely that this information would have changed the ALJ's determination that Potts did not have a severe mental impairment (because of the time element). But even assuming a severe mental impairment, the AltaPointe evidence submitted to the Appeals Council does not contain any information from a therapist or psychiatrist regarding any limitations (on Potts' ability to perform the mental requirements of work[13]) attendant to his major depressive disorder, single episode (*see* Doc. 20, PageID. 698-728) and certainly nothing to indicate that Potts had any mental

---

(Exhibit B15F)."); *compare id. with id.,* PageID. 518-19 (Exhibit B15F is Perry's "To Whom it May Concern" letter)).

[13] *Compare* 20 C.F.R. § 416.922(b) (recognizing basic mental work activities to be understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting) *with* 20 C.F.R. § 416.945(c) ("When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do . . . other work.").

limitations more severe than those included by the ALJ in her RFC determination (*compare id. with* Doc. 14, PageID. 146 ("**Due to pain, *psychological factors*, fatigue, side effects, etc., he would be expected to experience deficits in concentration, persistence and pace that would limit him to the performance of simple, unskilled tasks with only occasional changes in the work setting or duties**.") (additional emphasis supplied)). Accordingly, this Court should find that the Appeals Council did not err in determining that the new evidence did not establish "a reasonable probability that it would change the outcome of the decision." (Doc. 14, PageID. 122).

C. **New Evidence Submitted to this Court.** Finally, the Defendant has read Plaintiff's brief as implicitly seeking a sentence 6 remand for consideration of new evidence, as Plaintiff has attached certain evidence that was generated after he presented evidence to the Appeals Council on July 21, 2021 (*compare* Doc. 22, PageID. 731 (Potts' statement that he submitted mental records to the Appeals Council on July 21, 2021) *with* Doc. 22-5, PageID. 748-56 & 764-68, and Doc. 26-2,[14] PageID. 792-96)). Potts' mother concentrated most of her argument during the hearing on August 18, 2022, on the "new" evidence generated by the Emerald Coast Center for Neurological Disorders and Dr. Brett W. Turner, thereby confirming her son was seeking a sentence six remand for consideration of new evidence. (*See* Doc. 27 (transcript of August 18, 2022 hearing)).

A "sentence six" remand under 42 U.S.C. § 405(g), *see* 42 U.S.C. § 1383(c)(3) (recognizing in SSI cases, like the instant one, that "[t]he final determination of the

---

[14] The undersigned does not reference here the evidence attached at Document 26-1 (*see id.,* PageID. 787-90) because this evidence is also included as an attachment to Document 22 (*see* Doc. 22-5, PageID. 754-56 & 768).

Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."), "'provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court.'" *McLain v. Commissioner, Social Sec. Admin.,* 676 Fed.Appx. 935, 940 (11th Cir. Jan. 20, 2017), quoting *Ingram, supra,* 496 F.3d at 1267. "[A] district court may remand a case 'to the Commissioner for the taking of additional evidence upon a showing [by Plaintiff] that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.,* quoting *Ingram,* 496 F.3d at 1261.

Here, the information/evidence submitted to this Court by Potts comes from two sources, the Emerald Coast Center for Neurological Disorders ("Emerald Coast" Center), covering the period August 16, 2021 through January 18, 2022 (*see* Doc. 22-5, PageID. 748-56 & 764-68; Doc. 26-1, PageID. 787-90), and from Dr. Brett W. Turner, who conducted a neuropsychological evaluation of the Potts over the course of four days, May 25, 2022, June 8, 2022, June 13, 2022, and July 13, 2022 (*see* Doc. 26-2, PageID. 792-96). Potts first presented himself to the Emerald Coast Center for neurological evaluation by Dr. Daniel Ross, on August 16, 2021 (*see id.,* PageID. 764-65), and following memory testing on December 13, 2021, 40% of which was invalid (*see id.,* PageID. 748-51 & 754-55), and a 48-hour ambulatory EEG, which began on December 27, 2021 and was normal (*id.,* PageID. 756), the new evidence from Emerald Coast Center concludes with a January 18, 2022 follow-up visit to Dr. Ross, who

administered the Montreal Cognitive Assessment,[15] and assessed a mild cognitive impairment, Attention Deficit Disorder ("ADD") without hyperactivity, and "concussion[.]" (*Id.,* PageID. 768). As for the neuropsychological evaluation conducted by Dr. Turner over the course of four days (spanning late-May, 2022 through mid-July, 2022), Potts was diagnosed with post-concussion syndrome, generalized anxiety disorder, and major depressive disorder, recurrent, mild, following all testing (Doc. 26-2, PageID. 795; *compare id. with id.,* PageID. 792-95; *see id.,* PageID. 795 & 796 ("The patient's motivation during testing was variable, and it is possible that the current evaluation results slightly underestimate his true level of cognitive ability. His attention and concentration during testing were also variable, and his tolerance for frustration was limited. . . . Psychological testing indicates that the patient is experiencing severe symptoms of generalized anxiety, as well as mild symptoms of major depression.")).

Having reviewed this evidence, the undersigned cannot find that it is material because it was all generated after the ALJ's final decision denying benefits on April 7, 2021 (*compare* Doc. 22-5, PageID. 748-56 & 764-68 & Doc. 26-1, PageID. 787-90 (evidence generated from August 16, 2021 through January 18, 2022), and Doc. 26-2, PageID. 792-96 (neuropsychological evaluation by Dr. Turner conducted over the course of four days, May 25, 2022, June 8, 2022, June 13, 2022, and July 13, 2022) *with* Doc. 14, PageID. 153 (ALJ's decision entered on April 7, 2021)). Moreover, there is no information contained in these records that would begin to suggest that these new "diagnoses" would cause limitations more severe than the limitations set forth in the ALJ's RFC assessment. Accordingly, this Court should find that it is not probable that

---

[15] Potts scored 25/30 on this test. (Doc. 22-5, PageID. 767).

this new evidence would have materially affected the ALJ's decision that Potts was not disabled from his SSI application date of June 6, 2019 through the date of her decision, April 7, 2021.

## CONCLUSION

In light of the foregoing, it is **RECOMMENDED** that the decision of the Commissioner of Social Security denying Plaintiff supplemental security income benefits be affirmed.[16]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is

---

[16] The undersigned is unaware of there being a limit on the number of times that an individual can file an application seeking an award of SSI benefits.

made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 26th day of August, 2022.

s/P. Bradley Murray_____
**UNITED STATES MAGISTRATE JUDGE**